**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
         lrosen@rosenlegal.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONALD CHU, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BIOAMBER INC., JEAN-FRANÇOIS HUC, FABRICE ORECCHIONI and MARIO SAUCIER,<br><br>Defendants. | Case No. 17-cv-1531<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Donald Chu ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding BioAmber Inc. ("BioAmber" or the "Company"), and information readily

1

obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired BioAmber securities: (1) pursuant and/or traceable to BioAmber's secondary public offering on or about January 23, 2017 (the "Offering"); and/or (2) publicly traded on the open market from January 23, 2017 through March 16, 2017, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Act of 1933 (the "Securities Act") and under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v) and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misleading statements entered this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased BioAmber securities pursuant and/or traceable to the Company's Offering and/or during the Class Period and was economically damaged thereby.

7. Defendant BioAmber an industrial biotechnology company, which produces and sells bio-succinic acid to various chemical market customers in the United States. The Company is incorporated in Delaware and its principal executive offices is located in Montreal, Quebec, Canada. BioAmber's common stock is traded on the New York Stock Exchange ("NYSE") under the ticker symbol "BIOA."

8. Defendant Jean-François Huc ("Huc") was the Company's Chief Executive Officer and President until February 17, 2017.

9. Defendant Fabrice Orecchioni ("Orecchioni") has been the Company's Chief Executive Officer and President since February 17, 2017.

10. Defendant Mario Saucier ("Saucier") has been the Company's Chief Financial Officer throughout the Class Period.

11. Defendants Huc, Orecchioni and Saucier are collectively referred to herein as the "Individual Defendants."

12. Each of the Individual Defendants:

a. directly participated in the management of the Company;

b. was directly involved in the day-to-day operations of the Company at the highest levels;

  c. was privy to confidential proprietary information concerning the Company and its business and operations;

  d. was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

  e. was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

  f. was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

  g. approved or ratified these statements in violation of the federal securities laws.

13. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

15. Defendants BioAmber and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

16. The Offering was made by the Company pursuant to a shelf registration statement on Form S-3 that was previously filed with the SEC and declared effective by the SEC on January 12, 2017 (the "Registration Statement"). The Registration Statement was signed by Defendants Huc and Saucier.

17. On January 23, 2017, the Company commenced the Offering, selling approximately 2.1 million shares of its common stock at $4.75 per share, together with warrants to purchase a minimum of 1,052,632 shares of common stock of the Company with an exercise price of US$5.50 per share of common stock, with expected gross proceeds to the Company of $10 million (assuming no exercise of the warrants).

18. On January 23, 2017, the Company filed a Form 424B5 with the SEC, containing BioAmber's Preliminary Prospectus Supplement, dated January 12, 2017, for the Offering (the "Preliminary Prospectus").

19. On January 24, 2017, the Company announced an increase of the Offering to $17.5 million.

20. On January 24, 2017, the Company filed a Form 424B5 with the SEC, containing BioAmber's Prospectus Supplement, dated January 12, 2017, for the Offering (the "Prospectus Supplement," together with the Preliminary Prospectus, the "Prospectus" and collectively with the Registration Statement, the "Offering Documents").

## Materially False and Misleading Statements Issued During the Class Period

21. The Prospectus stated the following with regards to the Company's operating results:

**Recent Operating Results (Preliminary and Unaudited)**

*For the three months and year ended December 31, 2016, we expect total revenues to be between $2.0 million and $2.2 million, and $9.6 million and $9.8 million*, respectively, as compared to total revenues of $1.1 million and $2.2 million for the three months and year ended December 31, 2015, and $3.7 million for the three months ended September 30, 2016. These expected increases compared to 2015 are driven by the production ramp-up of our Sarnia facility, which started its commercial production in October 2015, while the expected decrease compared to the three months ended September 30, 2016 is driven by a large customer that was expected to purchase $2.8 million of succinic acid in Q4 2016, but due to a technical

5

problem in its manufacturing facility postponed the order to 2017. Our revenues are subject to variation quarter over quarter due to the timing of our sales to some of our key customers. As of January 1, 2017, we had cash and cash equivalents of $16.2 million, compared to $15.9 million as of September 30, 2016. In addition, we had an additional $8.9 million in subscription proceeds from our sale of warrants to purchase up to 2,224,199 shares of common stock in December 2016, all of which were placed into escrow until the satisfaction of the conditions set forth in those warrants. See "—Offering of Common Stock and Warrants."

22. The statements contained in ¶ 21 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) a large customer of the Company that was expected to purchase $2.8 million of succinic acid in Q4 2016 experienced a technical problem in its manufacturing facility and postponed the order to 2017; and (2) as a result, Defendants' statements about the Company's business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## The Truth Emerges

23. On March 16, 2017, the Company issued a press release during after-hours trading announcing disappointing financial results for the 2016 fiscal year, noting that "[o]ur fourth quarter 2016 product sales of approximately $631,000 were below our previously disclosed fourth quarter expectations of $2.0 to $2.2 million."

24. On that same day, the Company held an earnings conference call during which Defendant Orecchioni stated the following:

> Adding to the pricing pressures, we experienced a disruption from a large customer that was expected to purchase $2.8 million of succinic acid in Q4 2016, but due to a technical problem in its manufacturing facility postponed the order to 2017.

6

25. On this news, shares of BioAmber fell $0.59 per share or over 18% from its previous closing price on unusually high volume to close at $2.55 per share on March 17, 2017, damaging investors.

26. At the time of the filing of this action, BioAmber securities traded at approximately $2.55 per share.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired BioAmber securities publicly traded during the Class Period and/or pursuant and/or traceable to the Offering, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

28. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, BioAmber securities were actively traded on NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

29. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

30. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

31. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a. whether the Securities Act was violated by Defendants' acts as alleged herein;

    b. whether the Exchange Act was violated by Defendants' acts as alleged herein;

    c. whether statements made by Defendants to the investing public misrepresented material facts about the Company's financial condition and business;

    d. whether Defendants' public statements to the investing public omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

    e. whether the Defendants caused the Company to issue false and misleading SEC filings;

    f. whether Defendants acted knowingly or recklessly in issuing false and SEC filing;

    g. whether the prices of BioAmber securities were artificially inflated because of the Defendants' conduct complained of herein; and

    h. whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

32. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden

of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

33. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

    a. BioAmber securities met the requirements for listing, and were listed and actively traded on NYSE, a highly efficient and automated market;

    b. As a public issuer, the Company filed periodic public reports with the SEC and NYSE;

    c. The Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

    d. The Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

34. Based on the foregoing, the market for BioAmber securities promptly digested current information regarding BioAmber from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

35. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v.*

*United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

36.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

37.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

38.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

39.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: (1) employed devices, schemes and artifices to defraud; (2) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (3) engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of BioAmber securities during the Class Period.

40.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or

dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

41. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Company personnel to members of the investing public, including Plaintiff and the Class.

42. As a result of the foregoing, the market price of BioAmber securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of BioAmber securities during the Class Period in purchasing BioAmber securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

43. Had Plaintiff and the other members of the Class been aware that the market price of BioAmber securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased BioAmber securities at the artificially inflated prices that they did, or at all.

44. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

45. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of BioAmber securities during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

46. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

47. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's misstatement of revenue and profit and false financial statements.

48. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

49. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual

Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of BioAmber securities.

50. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

### COUNT III

### Violation of Section 11 of the Securities Act
### Against All Defendants

51. Plaintiff repeats and realleges each and every allegation contained above.

52. The Offering Documents for the Offering was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

53. The Company is the registrant for the Offering. Defendants are responsible for the contents of the Offering Documents based upon their status as directors of the Company or because they signed or authorized the signing of the Registration Statement on their behalf pursuant to Sections 11(a)(1)-(3) of the Securities Act.

54. As issuer of the shares, the Company is strictly liable to Plaintiff and the Class for the misstatements and omissions.

55. The Company is strictly liable for the contents of the Offering Documents. Defendants failed to make a reasonable investigation or possess reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omissions of any material facts and were not misleading.

56. By reasons of the conduct herein alleged, each Defendant named in this Count violated Section 11 of the Securities Act.

57. Plaintiff acquired BioAmber securites pursuant to the Offering Documents.

58. Plaintiff and the Class have sustained damages. The value of BioAmber securites has declined substantially subsequent to and due to Defendants' violations.

59. At the times Plaintiff purchased BioAmber securites Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the Offering. Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiff filed this Complaint. Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this Complaint.

## COUNT IV

### Violations of Section 15 of the Securities Act
### Against Individual Defendants

60. Plaintiff repeats and realleges each and every allegation contained above.

61. This claim is asserted against the Individual Defendants, each of whom was a control person of the Company during the relevant time period.

62. For the reasons set forth above in the First Claim, above, the Company is liable to the Plaintiff and the members of the Class who purchased BioAmber securities in the Offering based on the untrue statements and omissions of material fact contained in the Offering Documents and Prospectus, pursuant to Section 11 of the Securities Act, and were damaged thereby.

63. The Individual Defendants were control persons of the Company by virtue of, among other things, their positions as senior officers of the Company, and they were in positions

14

to control and did control, the false and misleading statements and omissions contained in the Offering Documents.

64. None of the Individual Defendants made reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were accurate and complete in all material respects. Had they exercised reasonable care, they could have known of the material misstatements and omissions alleged herein.

65. This claim was brought within one year after the discovery of the untrue statements and omissions in the Offering Documents and within three years after the Company shares were sold to the Class in connection with the Offering.

66. By reason of the misconduct alleged herein, for which the Company is primarily liable, as set forth above, the Individual Defendants are jointly and severally liable with and to the same extent as the Company pursuant to Section 15 of the Securities Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c) awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 18, 2017 Respectfully Submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
          lrosen@rosenlegal.com

*Counsel for Plaintiff*