**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

CHAD ZUBRISKI, Individually and on Behalf
of All Others Similarly Situated,

           Plaintiff,

      v.

BIOAMBER INC., JEAN-FRANÇOIS HUC,
and MARIO SAUCIER,

          Defendants.

Civil Action No. 2:17-cv-01531-ADS-GRB

**Oral Argument Requested**

**FILED UNDER SEAL**
**(January 11, 2018 Electronic Order)**

**DEFENDANTS' CONSOLIDATED BRIEF IN**
**OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR LEAVE**
**TO AMEND THE FIRST AMENDED COMPLAINT AND IN FURTHER**
**SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ..................................................................................................................... 5

I.      Plaintiffs' Original Complaint ..................................................................................... 5

II.     Plaintiffs' First Amended Complaint ........................................................................... 6

III.    Plaintiffs' Proposed Second Amended Complaint ....................................................... 7

IV.     The Vinmar Agreement ................................................................................................ 9

ARGUMENT ......................................................................................................................... 12

I.      Plaintiffs' Motion For Leave To Amend Should Be Denied As Futile. ...................... 12

        A.      The New Vinmar-Related Allegations Fail To State A Claim. ......................... 13

                1.      The Proposed Second Amended Complaint Does Not Allege A Material
                        Misstatement Or Omission Regarding The Vinmar Agreement.............. 13

                2.      The Proposed Second Amended Complaint Does Not Allege Loss
                        Causation................................................................................................. 16

        B.      The Proposed New Allegations Regarding BioAmber's Revenue Projections
                Still Fail To State A Claim. ............................................................................... 17

II.     Plaintiffs' Proposed Amendment Is Unduly Delayed And Dilatory. .......................... 22

III.    Plaintiffs' Have Abandoned The Claims In The First Amended Complaint.................. 24

CONCLUSION ...................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Accelecare Wound Ctrs., Inc. v. Bank Of New York*,
No. 08 CIV.8351 (DLC), 2009 WL 2460987 (S.D.N.Y. Aug. 11, 2009) ..............................23

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
No. 03 MDL 1529 JMF, 2013 WL 6838899 (S.D.N.Y. Dec. 27, 2013) ................................24

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)........................................................................................................12

*Bymoen v. Herzog, Heine, Geduld, Inc.*,
No. 88 CIV. 1796 (KMW), 1991 WL 95387 (S.D.N.Y. May 28, 1991)............................5, 24

*Campo v. Sears Holdings Corp.*,
371 F. App'x. 212 (2d Cir. 2010) ........................................................................................4, 20

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)............................................................................................9, 11, 16

*In re Citigroup Inc. Sec. Litig.*,
753 F. Supp. 2d 206 (S.D.N.Y. 2010)......................................................................................20

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014).....................................................................................................25

*Dep't of the Treasury of the State of New Jersey & Its Div. of Inv., v. Cliffs Nat. Res., Inc.*,
No. 1:14 CV 1031, 2015 WL 7306252 (N.D. Ohio Mar. 5, 2015).........................................18

*Ganino v. Citizens Utils. Co.*,
228 F.3d 154 (2d Cir. 2000)......................................................................................................17

*Gart v. Electroscope, Inc.*,
24 F. Supp. 2d 969 (D. Minn. 1998).........................................................................................14

*Johnson v. Siemens AG*,
No. 09-CV-5310 JG RER, 2011 WL 1304267 (E.D.N.Y. Mar. 31, 2011).............................12

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001)......................................................................................................22

*Lee v. Regal Cruises, Ltd.*,
916 F. Supp. 300 (S.D.N.Y. 1996)...........................................................................................12

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005)................................................................................12, 17

*In re Livent, Inc. Noteholders Sec. Litig.*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001)..........................................................................14

*Malin v. XL Capital Ltd.*,
   499 F. Supp. 2d 117 (D. Conn. 2007)..........................................................................18

*Martin v. Dickson*,
   100 F. App'x 14 (2d Cir. 2004) ..............................................................................3, 12

*Martinez v. City of New York*,
   No. 11 CIV. 7461 JMF, 2012 WL 6062551 (S.D.N.Y. Dec. 6, 2012) ....................24

*In re Millennial Media, Inc. Sec. Litig.*,
   No. 14 CIV. 7923 PAE, 2015 WL 3443918 (S.D.N.Y. May 29, 2015) ....................18

*In re Pall Corp.*,
   No. 07-CV-3359 (JS)(ARL), 2009 WL 3111777 (E.D.N.Y. Sept. 21, 2009) ..........18

*Priestley v. Am. Airlines, Inc.*,
   No. 89 CIV. 8265 (JMC), 1991 WL 64459 (S.D.N.Y. Apr. 12, 1991) ....................23

*Prudential Ins. Co. v. BMC Indus. Inc.*,
   655 F. Supp. 710 (S.D.N.Y. 1987)...............................................................................12

*Rapoport v. Asia Elecs. Holding Co., Inc.*,
   88 F. Supp. 2d 179 (S.D.N.Y. 2000)............................................................................14

*Reid v. Ingerman Smith LLP*,
   876 F. Supp. 2d 176 (E.D.N.Y.2012) ..........................................................................24

*Ricciuti v. N.Y.C. Transit Auth.*,
   941 F.2d 119 (2d Cir. 1991).........................................................................................11

*Rivera v. Balter Sales Co. Inc.*,
   No. 14-CV-1205-LTS, 2014 WL 6784384 (S.D.N.Y. Dec. 1, 2014)........................24

*Ross v. Lloyds Banking Grp., PLC*,
   546 F. App'x 5 (2d Cir. 2013) .....................................................................................12

*S.E.C. v. Dunn*,
   587 F. Supp. 2d 486 (S.D.N.Y. 2008).........................................................................19

*Sazerac Co., Inc. v. Falk*,
   861 F. Supp. 253 (S.D.N.Y.1994).................................................................................3

*In re Seadrill Ltd. Sec. Litig.*,
　No. 14 CIV. 9642 (LGS), 2016 WL 3461311 (S.D.N.Y. June 20, 2016) .............................21

*State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*,
　921 F.2d 409 (2d Cir. 1990)..........................................................................................22, 23

*Suez Equity Inv'rs, L.P. v. Toronto–Dominion Bank*,
　250 F.3d 87 (2d Cir.2001)......................................................................................................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
　551 U.S. 308 (2007)................................................................................................................21

*Volunteer Fire Ass'n of Tappan, Inc. v. Cty. of Rockland*,
　No. 09-CV-4622 CS, 2010 WL 4968247 (S.D.N.Y. Nov. 24, 2010)................................1, 25

*Youmans v. Schriro*,
　No. 12 Civ. 3690(PAE)(JCF), 2013 WL 6284422 (S.D.N.Y. Dec. 3, 2013) .........................24

**Statutes**

15 U.S.C. § 77z–2 ........................................................................................................................21

15 U.S.C. § 78u-4 ........................................................................................................................12

15 U.S.C. § 78u-5 ........................................................................................................................21

**Rules**

Fed. R. Civ. P. 9 ..........................................................................................................................12

Fed. R. Civ. P. 12 ..........................................................................................................................1

Fed. R. Civ. P. 15 ........................................................................................................................12

**Other Authorities**

SEC Staff Accounting Bulletin No. 101
　64 Fed. Reg. 68936-01 (Dec. 9, 1999)..................................................................................20

Defendants BioAmber Inc. ("BioAmber" or the "Company"), Jean-François Huc, and

Mario Saucier (together, "Defendants"), respectfully submit this consolidated brief in opposition to

Plaintiffs' cross-motion for leave to amend the First Amended Complaint and in further support of

their motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the First Amended Complaint with

prejudice (filed on October 6, 2017).

## PRELIMINARY STATEMENT

Plaintiffs are seeking leave to amend their complaint for a ***second*** time in yet another

attempt to save this meretricious litigation from being dismissed.  Ten months ago, Plaintiffs

rushed into this Court and alleged securities fraud at the first sign of a downturn in BioAmber's

share price and they have been grasping for a viable theory of fraud ever since.  But Plaintiffs'

filing of two wholly deficient complaints—which were based on completely different allegations,

alleged disclosures, and theories of fraud—are enough.  Defendants respectfully submit that

Plaintiffs should not be permitted to move the target yet again with an entirely new, but equally

deficient, theory of fraud (one not asserted in either of the two preceding complaints) that this time

is premised principally on an agreement executed years ago between BioAmber and one of its

distributors, ███████████████████████████████████████████████████████████

███████████████████████.  Plaintiffs' motion for leave to amend thus should be denied as futile.

And because Plaintiffs have not responded to any of the arguments in Defendants' pending motion

to dismiss the First Amended Complaint, and have waived any basis to oppose dismissal of that

complaint, *see, e.g.*, *Volunteer Fire Ass'n of Tappan, Inc. v. Cty. of Rockland*, No. 09-CV-4622

CS, 2010 WL 4968247, at *2 (S.D.N.Y. Nov. 24, 2010), Defendants respectfully ask this Court to

dismiss this litigation in its entirety and with prejudice.

Plaintiffs began this litigation by filing a facially deficient complaint alleging that

BioAmber's prospectus supplement in connection with a follow-on public offering in January 2017 failed to disclose information about the postponement of an order by a large customer.  *See* Dkt. 1, at ¶¶ 21-22.  But the prospectus supplement *did disclose the deferral of this order*.  And the complaint even *quoted the portion of the prospectus that disclosed this fact*.  This original fraud theory was dropped in the next complaint, filed five months later.

In their second complaint (the "First Amended Complaint"), Plaintiffs abandoned the fraud allegations in the original complaint and alleged a brand new fraud theory.  This time, they alleged that because BioAmber's Q4 2016 revenues turned out to be lower than what it had projected, Defendants somehow must have "plainly kn[own]" when BioAmber made these projections that they "overstated BioAmber's revenues."  Dkt. 25 at ¶¶ 13, 57.  This new fraud theory was just as meritless as the first one.  Among the other reasons for dismissal addressed in Defendants' pending motion to dismiss, BioAmber's revenue projections that Plaintiffs attacked are protected from liability as a matter of law by the Safe Harbor for Forward-Looking Statements in the Private Securities Litigation Reform Act ("PSLRA").  In addition, the First Amended Complaint alleged no facts—let alone facts pleaded with the particularity required by the PSLRA—showing that Defendants did not believe these projections to be reasonable when they made them.

Apparently recognizing that that their second attempt to allege fraud was as meritless as their first, Plaintiffs chose not to oppose Defendants' pending motion to dismiss.  Rather, almost nine months after filing their original complaint and approximately two months after Defendants moved to dismiss their First Amended Complaint, Plaintiffs are now asking this Court to give them a third bite at the apple so they can try to concoct yet another theory of fraud by filing a proposed second amended complaint (the "Proposed Second Amended Complaint" or "PSAC").

Plaintiffs' motion to amend should be denied on two independent grounds.  First, Plaintiffs'

proposed amendment would be futile.  "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."  *Martin v. Dickson*, 100 F. App'x 14, 16 (2d Cir. 2004).  The new allegations in the Proposed Second Amended Complaint principally relate to a July 2014 distribution agreement between BioAmber and one of its distributors, Vinmar International Ltd. ("Vinmar") (the "Vinmar Agreement").  ████████████ ████████████████████████████████████████████████████, as well as by BioAmber's judicially noticeable public disclosures and Plaintiffs' own allegations. (The Vinmar Agreement is attached as Ex. 1 to the Decl. in Support of Defendants' Consolidated Brief in Opposition to Plaintiffs' Cross-Motion for Leave to Amend the First Amended Complaint and in Further Support of Motion to Dismiss the First Amended Complaint submitted herewith.) Where, as here, a plaintiff bases a claim on a document and that document contradicts the allegations in the complaint, the document controls and the claim must be dismissed as a matter of law.  *See Sazerac Co., Inc. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y.1994).

In addition, Plaintiffs' motion to amend should be denied as futile because the new Vinmar-related allegations fail to support any inference of scienter, a required element of Plaintiffs' securities fraud claim.  Plaintiffs argue that in July 2015 BioAmber supposedly released Vinmar from its contractual obligations and hid this from investors. ████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████ No inference of scienter likewise can be drawn from the statements allegedly attributed in the Proposed Second Amended Complaint to "Former Employee 4," a former vice president of sales who worked at BioAmber for less than a year and is not alleged ever to have seen the Vinmar Agreement.

Plaintiffs' Proposed Second Amended Complaint is futile for yet another reason—it fails to allege the requisite element of loss causation.  The Proposed Second Amended Complaint nowhere identifies any "corrective" disclosures relating to the Vinmar Agreement that caused the price of BioAmber shares to fall.  To the contrary, undermining any inference of loss causation as a matter of law, the Proposed Second Amended Complaint affirmatively alleges just the opposite—that the terms of the Vinmar Agreement and BioAmber's supposed "release" of Vinmar were "never publicly disclosed" at all.

In addition to injecting these entirely new Vinmar-related allegations, Plaintiffs in the Proposed Second Amended Complaint seek to add allegations regarding the Q4 2016 revenue projections challenged in the existing First Amended Complaint.  But these new allegations likewise would be futile because they fail to cure the fatal defects in the First Amended Complaint addressed in Defendants' pending motion to dismiss.  These new allegations are primarily based on statements allegedly attributed to "Former Employee 5," a former supply chain director at BioAmber's manufacturing plant, about what he allegedly heard second-hand from another BioAmber employee about what the Company's CFO in turn allegedly had determined needed to occur before the end of Q4 2016 in order for the revenue projections to be achieved.  Former Employee 5, however, is nowhere alleged to have spoken with or had any other direct communications with the CFO about these revenue projections or the requirements for recognizing the revenues on which those projections were based.  As such, these statements are rank hearsay and cannot reliably support any inference of scienter.  Under controlling Second Circuit law, these allegations must be disregarded.  *See Campo v. Sears Holdings Corp.*, 371 F. App'x. 212, 217 (2d Cir. 2010).  Moreover, Former Employee 5 has disavowed these allegations as factually incorrect and wholly unauthorized.  *See* Ex. 2 (Declaration of Raul Villela).  In short, because the Proposed

4

Second Amended Complaint would still fail to state a claim upon which relief could be granted, Plaintiffs' motion should be denied as futile.

Finally, Plaintiffs' motion for leave to amend should be denied for the separate and independent reason that Plaintiffs are proposing to file a third complaint that would assert an entirely new fraud theory because they expect that the securities claims alleged in their pending First Amended Complaint will be dismissed.  "[W]here it appears that a plaintiff's purpose in asserting a new claim is his or her anticipation of an adverse ruling on the original claims, the court will deny leave to amend." *Bymoen v. Herzog, Heine, Geduld, Inc.*, No. 88 CIV. 1796 (KMW), 1991 WL 95387, at *1 (S.D.N.Y. May 28, 1991).  This fact, coupled with Plaintiffs' almost nine-month delay in asserting these brand-new claims, warrants denial of their motion to amend.

Because Plaintiffs' motion for leave to file the Proposed Second Amended Complaint should be denied as futile and as otherwise improper, and because Plaintiffs have waived any grounds to oppose dismissal of the pending First Amended Complaint, Defendants respectfully submit that this action should be dismissed in its entirety, and with prejudice.

## BACKGROUND

### I.    Plaintiffs' Original Complaint

The original complaint in this action was filed on March 18, 2017 on behalf of all persons who purchased BioAmber securities in its secondary public offering on January 23, 2017 (the "January Offering") or on the open market from January 23, 2017 through March 16, 2017.  *See* Dkt. No. 1 at ¶ 1.  In that complaint, Plaintiffs alleged that in BioAmber's prospectus supplement filed in connection with the January Offering, "Defendants made false and/or misleading statements and/or failed to disclose that . . . a large customer of the Company that was expected to purchase $2.8 million of succinic acid in Q4 2016 experienced a technical problem in its manufacturing facility and postponed the order to 2017."  *Id.* at ¶ 22.  In the same public disclosure

that Plaintiffs challenged in that complaint, however, BioAmber disclosed the very information

that Plaintiff claimed had been concealed—namely, that "the expected decrease [in revenue]

compared to the three months ended September 30, 2016 is driven by a large customer that was

expected to purchase $2.8 million of succinic acid in Q4 2016, but due to a technical problem in its

manufacturing facility ***postponed*** the order to 2017." *Id.* at ¶ 21 (emphasis added).  Indeed, this

language was quoted in the original complaint itself, in the paragraph of the complaint

immediately preceding the one in which Plaintiffs contended this disclosure had been omitted.

## II.   <u>Plaintiffs' First Amended Complaint</u>

Nearly five months later, on August 7, 2017, Plaintiffs filed the First Amended Complaint

on behalf of purchasers of BioAmber securities from December 23, 2016 through March 16, 2017.

*See* Dkt. No. 25 at ¶ 1.  In this second complaint, Plaintiffs abandoned their original theory, and

alleged an entirely new theory of fraud premised solely on BioAmber's revenue projections for Q4

2016.  Specifically, Plaintiffs alleged that in the prospectus supplement for its December 23, 2016

secondary offering (the "December Offering"), BioAmber "estimated Q4 2016 revenues of

between $2.0 million and $2.2 million." *Id.* at ¶ 6.  Plaintiffs alleged that BioAmber made this

same revenue projection in the prospectus supplement for its January Offering.  *Id.* at ¶ 7.

Plaintiffs further alleged that on March 16, 2017, BioAmber announced Q4 2016 revenues of

$631,000, and "blamed [the revenue miss on] a shipment of $1.4 million . . . which had not

shipped by the end of the quarter."  *Id.* at ¶ 10.  The First Amended Complaint asserted without

any factual support that "Defendants plainly knew or were reckless in not knowing that the $1.4

million of bio-succinic acid had not shipped by the quarter's end" and that BioAmber's projections

"overstated BioAmber's revenues by nearly 70%."  *Id.* at ¶¶ 13, 57.  On October 6,  2017,

Defendants filed their motion to dismiss this First Amended Complaint in its entirety as a matter of

law, in part because BioAmber's revenue projections are forward-looking statements protected

6

from liability under the PSLRA's Safe Harbor for Forward-Looking Statements (Dkt No. 26-1 ("Def. Mot.") at 9-18) and in part because the First Amended Complaint alleged absolutely no facts supporting any inference that Defendants did not believe these revenue projections were reasonable and achievable at the time they were made (*id.* at 18-19).

III.    <u>**Plaintiffs' Proposed Second Amended Complaint**</u>

On December 5, 2017, nearly two months after Defendants filed their motion to dismiss and nine months after the original complaint had been filed, Plaintiffs filed a motion for leave to file yet another, third complaint in this matter (a second amended complaint).  *See* Dkt. Nos. 30, 30-1 ("Pl. Mot.").  Plaintiffs did not respond to any of the substantive legal arguments in Defendants' motion to dismiss, but rather argued that they should be permitted to amend their complaint yet again and that the pending motion to dismiss should be denied as moot.  Pl. Mot. at 15-16.  In the Proposed Second Amended Complaint, Plaintiffs seek to extend the class period from just three months long to a remarkable ***three years***—to July 15, 2014 through August 3, 2017.  PSAC ¶ 1.  It also proposes to introduce for the very first time an entirely new set of allegations based on BioAmber's contractual relationship with a distributor, Vinmar, which is set forth in the Vinmar Agreement.  *See id.* ¶¶ 57-87, 116-36, 144-47.

The Proposed Second Amended Complaint alleges that Mr. Huc supposedly told Former Employee 4 that the Vinmar Agreement "made Vinmar BioAmber's exclusive broker in Asia" for bio-succinic acid produced at BioAmber's manufacturing facility in Sarnia, Ontario, Canada (the "Sarnia Plant"), which BioAmber allegedly failed to disclose to investors and which supposedly violated an exclusivity provision in BioAmber's joint venture agreement with another company, Mitsui & Co., Ltd. ("Mitsui"), for the Sarnia Plant (the "Mitsui JV Agreement").  *See id.* ¶¶ 59, 118, 122, 125, 128, 131, 136.  The Proposed Second Amended Complaint further alleges that Mr. Huc supposedly stated at a meeting in July 2015 that he had "personally relieved Vinmar from its

contractual obligation to purchase any bio-succinic acid from BioAmber during the remainder of 2015 and the entirety of 2016," which BioAmber allegedly concealed from investors.  *See id.* ¶¶ 77-81, 128, 131, 136.

The Proposed Second Amended Complaint also seeks to add new allegations relating to Plaintiffs' claims (in the First Amended Complaint) that challenge BioAmber's Q4 2016 revenue projections, which the new complaint alleges were not realized due to an inability to record revenue on an order from CJ CheilJedang Corporation ("CJCJ"), a Korean biotechnology company (the "CJCJ Order").  *See id.* ¶¶ 103-13.  According to the Proposed Second Amended Complaint, Former Employee 5 allegedly was told by another employee, Fabrice Orecchioni, that the Company's CFO (Mr. Saucier) had "determined contemporaneously with the CJC[J] Order that BioAmber could not recognize revenues from the CJCJ Order until CJCJ received the shipment" in Korea (*id.* ¶¶ 18, 105), which Plaintiffs allege did not occur prior to the close of Q4 2016.  The Proposed Second Amended Complaint, however, does not allege that Former Employee 5 ever spoke (or had any other communications) with Mr. Saucier himself about any such supposed determination that he made.

In addition, the Proposed Second Amended Complaint claims (for the first time) that, because Defendants allegedly knew that the CJCJ Order had not been delivered by December 31, 2016, the following additional statement, which appeared in the prospectus supplements for the December Offering and January Offering, was false or misleading: "we have not identified any unusual or unique events or trends that occurred during the period that might materially affect this preliminary estimate."  *Id.* ¶¶ 144, 151 (emphasis omitted).  Finally, the Proposed Second Amended Complaint adds allegations regarding Mr. Huc's compensation package upon his departure from the Company in February 2017 (*see id.* ¶¶ 156-57), and the terms of a debt facility

that BioAmber entered into with Bridging Finance, Inc. on September 30, 2016 (*see id.* ¶¶ 94-97).

## IV.   **The Vinmar Agreement**



Because the Proposed Second Amended Complaint focuses principally on the Vinmar Agreement
and its terms, this Court may properly consider it in deciding Plaintiffs' cross-motion for leave to
amend.  *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("[C]ourt[s]
may . . . consider [documents not attached to the complaint] where the complaint 'relies heavily
upon its terms and effect,' which renders the document 'integral' to the complaint.").



As BioAmber publicly disclosed to investors, however, at the time the Vinmar Agreement was executed in July 2014, ***the Sarnia Plant was not even built yet***. *See* Ex. 3 (BioAmber Form 10-Q dated August 12, 2014) at 30.  In August 2015, the Company disclosed that it "began commissioning and start-up of our Sarnia Plant in March 2015" and that it then "expect[ed] ***to begin*** commercial operations at our facility in Sarnia . . . in the ***third quarter of 2015*** and we may encounter ***substantial difficulties in ramping up operations*** and meeting the expectations of our customers."  *See* Ex. 4 (BioAmber Form 10-Q dated August 5, 2015) at 37 (emphasis omitted).  In November 2015, the Company disclosed that it had just "***started*** commercial scale production" at the Sarnia Plant "in October 2015."  *See* Ex. 5 (BioAmber Form 10-Q dated November 9, 2015) at 26 (emphasis added).  As Plaintiffs acknowledge, BioAmber disclosed to investors in its Form 10-K for 2015 filed in April 2016 that it only "expected production at the Sarnia [Plant] to reach full capacity . . . ***in 2017***."  PSAC ¶ 88 (emphasis added).





, the Court may

consider ██████████████ in disposing of Plaintiffs' motion for leave to amend. *See Ricciuti*

*v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("The adequacy of the proposed

amended complaint, however, is to be judged by the same standards as those governing the

adequacy of a filed pleading."); *Chambers*, 282 F.3d at 153.

## ARGUMENT

I.    **Plaintiffs' Motion For Leave To Amend Should Be Denied As Futile.**

A motion for leave to amend pursuant to Fed. R. Civ. P. 15 should be denied "if the amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) the opposing party would be prejudiced, or (4) would be futile." *Lee v. Regal Cruises, Ltd.*, 916 F. Supp. 300, 303 (S.D.N.Y. 1996), *aff'd*, 116 F.3d 465 (2d Cir. 1997). "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Martin*, 100 F. App'x at 16; *Prudential Ins. Co. v. BMC Indus. Inc.*, 655 F. Supp. 710, 711 (S.D.N.Y. 1987).

Like Plaintiffs' First Amended Complaint, the Proposed Second Amended Complaint alleges securities fraud claims that are subject to the heightened pleading requirements of Rule 9(b) and the PSLRA. *See* PSAC ¶ 1; Def. Mot. at pp. 7-9. The Proposed Second Amended Complaint therefore must plead fraud with particularity. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud . . ., a party must state with particularity the circumstances constituting fraud."). As the Second Circuit has explained, although "[a]ny fraud must be pled with particularity" under this rule, "the rule is applied assiduously to securities fraud." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 168 (2d Cir. 2005). In addition, the Proposed Second Amended Complaint must allege with the required particularity facts that "giv[e] rise to a ***strong inference*** that the defendant acted with the required state of mind"—*i.e.*, ***scienter***. 15 U.S.C. § 78u-4(b)(1), (2)(A) (emphasis added). In the Second Circuit, motions for leave to amend are routinely denied as futile for failure to meet the heightened pleading requirements of Rule 9(b) and the PSLRA. *See, e.g.*, *Ross v. Lloyds Banking Grp.*, PLC, 546 F. App'x 5, 12 (2d Cir. 2013); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007); *Johnson v. Siemens AG*, No. 09-CV-5310 JG RER, 2011 WL 1304267, at *21 (E.D.N.Y. Mar. 31, 2011).

Here, the Proposed Second Amended Complaint fails to state a claim for securities fraud under the exacting pleading requirements of Rule 9(b) and the PSLRA. ████████████████ ███████████████████████████████████████████████████████████████████████████, and the allegations Plaintiffs propose to add to supplement their pending claims concerning BioAmber's Q4 2016 revenue projections likewise fail to cure the fatal flaws in the First Amended Complaint.  Plaintiffs' proposed amendment is futile, and leave to amend should be denied.

      **A.**    **The New Vinmar-Related Allegations Fail To State A Claim.**

          **1.**    **The Proposed Second Amended Complaint Does Not Allege A Material Misstatement Or Omission Regarding The Vinmar Agreement.**

The Proposed Second Amended complaint seeks to add two new groups of allegations relating to the Vinmar Agreement, neither of which would withstand a motion to dismiss.  First, Plaintiffs allege that Mr. Huc supposedly told Former Employee 4 that the Vinmar Agreement "made Vinmar BioAmber's exclusive broker in Asia" for bio-succinic acid produced at BioAmber's Sarnia Plant, and that BioAmber failed to disclose this alleged exclusivity provision to investors.  *See* PSAC ¶¶ 4-8, 58-69, 118, 122, 125, 128, 131, 136.  Relatedly, Plaintiffs allege that BioAmber concealed that this supposed "Exclusivity Provision" violated a provision in a joint venture agreement between BioAmber and its joint venture partner, Mitsui, which prohibited the Sarnia Plant from appointing any entity as "the exclusive distributor in any geography" of bio-succinic acid.  *See id.* ¶¶ 64, 118, 122, 125, 128, 131, 136. ████████████████ █████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████

13



Plaintiffs' second group of Vinmar-related allegations concern BioAmber's alleged failure to disclose that in July 2015 Mr. Huc supposedly told Former Employee 4 and others at a meeting that he had "personally released" Vinmar from its obligations under the Vinmar Agreement for 2015 and 2016 to purchase bio-succinic acid from the Sarnia Plant.  *See* PSAC ¶¶ 9-12, 77-81, 128, 131, 136. ███████████████████████████████████████████████ ████████████████████████████████████████████████████████.  For one thing, Former Employee 4 is not alleged ever to have seen the Vinmar Agreement, much less read or had any understanding of its provisions, and his claimed understanding of what Mr. Huc

supposedly said about this contract is thus inherently unreliable and cannot support any inference of fraud.



. The Court may take judicial notice of these disclosures, the accuracy of which Plaintiffs do not dispute and cannot reasonably be disputed. *See Chambers*, 282 F.3d at 153. ███████████████████████████████████████████

### 2. The Proposed Second Amended Complaint Does Not Allege Loss Causation.

Adding the Vinmar-related allegations to this action would be futile for the separate and independent reason that Plaintiffs fail to allege loss causation. In order for the Vinmar-related allegations to support a claim for securities fraud, Plaintiffs must allege and ultimately prove that when the "truth" was revealed to investors, the market price of BioAmber's securities dropped. *See Suez Equity Inv'rs, L.P. v. Toronto–Dominion Bank,* 250 F.3d 87, 95 (2d Cir.2001). But Plaintiffs nowhere allege that BioAmber ever disclosed to the market that it supposedly had agreed to give Vinmar exclusivity (████████████████). In fact, Plaintiffs allege just the opposite—that the alleged Vinmar-related omissions and misstatements were "never publicly disclosed." *See* PSAC ¶¶ 57-59, 79. Moreover, the only investor losses that are alleged in the Proposed Second Amended Complaint are attributed to events entirely unrelated to the Vinmar Agreement or its terms. *See id.* ¶¶ 159-65. In that regard, when BioAmber announced in December 2016 that it would be canceling Vinmar's obligations to purchase product from the Sarnia Plant because it conflicted with Mitsui's efforts to distribute product for BioAmber as well, the market price of

BioAmber's shares rose:  BioAmber disclosed the amendment in its Form 8-K dated December 23, 2016 and, in response, BioAmber's closing price increased by $0.66, or approximately 15%, from its prior closing price.  *See* Exs. 11 (BioAmber Form 8-K dated December 23, 2016) and 12 (BioAmber share price on December 22 and 23, 2016); *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 n.8 (2d Cir. 2000) ("[A] district court may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment."). ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In short, "there is no allegation that the market reacted negatively to a corrective disclosure regarding the [alleged] falsity of [BioAmber's description of the terms of the Vinmar Agreement] and no allegation that [BioAmber] misstated or omitted risks that did lead to [a] loss." *Lentell*, 396 F.3d at 175.  This defect "is fatal under Second Circuit precedent." *Id.*

**B.  The Proposed New Allegations Regarding BioAmber's Revenue Projections Still Fail To State A Claim.**

The Proposed Second Amended Complaint seeks to add allegations relating to BioAmber's Q4 2016 revenue projections, which the existing First Amended Complaint attacks as fraudulent. The proposed new allegations, however, would not save this fraud theory from dismissal.

Plaintiffs propose to add allegations attributed to a former BioAmber employee (referred to as "Former Employee 5") that Plaintiffs contend show that the Company's Q4 2016 revenue projections were knowingly false when made.  *See* Pl. Mot. at p. 2; PSAC ¶¶103-13.  In addition to the fact that Former Employee 5 has now ***disavowed under oath*** the key  allegations attributed to him (*see* Ex. 2), which itself undermines the reliability of these allegations and would be grounds

for a motion to strike under Rule 12(f), *see Dep't of the Treasury of the State of New Jersey & Its Div. of Inv., v. Cliffs Nat. Res., Inc.*, No. 1:14 CV 1031, 2015 WL 7306252, at *2 (N.D. Ohio Mar. 5, 2015); *In re Millennial Media, Inc. Sec. Litig.*, No. 14 CIV. 7923 PAE, 2015 WL 3443918, at *5-14 (S.D.N.Y. May 29, 2015), these allegations are inherently unreliable on their face and would not support any inference of scienter.

More specifically, the Proposed Second Amended Complaint alleges that Mr. Orecchioni told Former Employee 5 that BioAmber's then CFO, Mr. Saucier, "determined contemporaneously with the CJC[J] Order that BioAmber could not recognize revenues from the CJCJ order until CJCJ received the shipment" in Korea.  PSAC ¶¶ 18, 105; Pl. Mot. at 2, 6, 9-10.  Plaintiffs then allege that the customer did not receive the shipment until after December 31, 2016, and that without the revenue from this order, BioAmber could not achieve its Q4 2016 projections.  PSAC ¶ 109.  The Proposed Second Amended Complaint, however, does not allege that Former Employee 5 ever spoke with Mr. Saucier or had any other communications directly with him in which the CFO said that he had made this determination before the revenue projections being challenged were made.  The ***third-hand*** allegation in the Proposed Second Amended Complaint (*i.e.*, what ***Former Employee 5*** allegedly said ***Mr. Orecchioni*** had told him about what ***Mr. Saucier*** supposedly had said to Mr. Orecchioni) is "based on impermissible hearsay and cannot be considered."  *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 139 n.17 (D. Conn. 2007) (refusing to consider allegations in a complaint based on what a confidential witness "reported that he was told" by superiors about various communications from others in the accounting department), *aff'd*, 312 F. App'x 400 (2d Cir. 2009).  "[H]earsay allegations and bald assertions will not defeat a Rule 12(b)(6) motion."  *In re Pall Corp.*, No. 07-CV-3359 (JS)(ARL), 2009 WL 3111777, at *6 (E.D.N.Y. Sept. 21, 2009) (alterations omitted).

The remaining allegations attributed to Former Employee 5 are also insufficient to support the requisite strong inference of scienter, and allowing them to be added by amendment would be futile.  More specifically, Plaintiffs allege that because of reports allegedly prepared by Former Employee 5, BioAmber's senior management somehow supposedly knew that the CJCJ order had not shipped before the end of December 2016 (and supposedly that the revenue associated with that order could not be recognized even though BioAmber received payment in full from the customer of the $1.4 million purchase price).  The Proposed Second Amended Complaint alleges that Former Employee 5's job "involved keeping track of large shipments" and that he generally "prepared weekly reports on the status of every shipment" that "were circulated to all management, including [Mr.] Huc and [Mr.] Saucier."  PSAC ¶¶ 110-11.  But this proposed allegation fails to support the required strong inference that at the time the challenged projections were made (1) any of the reports that Former Employee 5 allegedly had prepared addressed the status of the CJCJ Order (one way or another); (2) any of the reports actually had been read, reviewed, or otherwise accessed by any of the BioAmber officials who were involved with making the challenged revenue projections; or (3) (regardless of what any reports allegedly said or who allegedly saw them) any of those officials understood that in order for the revenue associated with the CJCJ order to be recognized, the customer needed to have received delivery of the product at its facility in Korea.  Indeed, there are a number of ways that BioAmber validly could have recognized the revenue from the CJCJ Order without making delivery in Korea, and Plaintiffs allege no facts that would preclude these alternative revenue recognition scenarios.  *See, e.g.*, *S.E.C. v. Dunn*, 587 F. Supp. 2d 486, 491 (S.D.N.Y. 2008) ("[S]ellers are permitted to recognize revenue at the time of sale but before physical delivery for products sold on a bill and hold basis" under which goods remain at the seller's site.); SEC Staff Accounting Bulletin No. 101, 64 Fed. Reg. 68936-01,

689339 (Dec. 9, 1999) (noting that, in certain circumstances, a company may recognize revenue once a product is brought to a shipping point and prior to physical delivery to the customer).

These new proposed allegations relating to Former Employee 5 layer speculation upon speculation and do not support a strong inference that Defendants did not believe that the Q4 2016 revenue projections were achievable when made.  For just this reason, the Second Circuit in *Campo* affirmed dismissal of securities fraud claims for failure to allege scienter where a confidential former employee witness "had no knowledge of whether [the individual defendants] actually accessed or reviewed the reports" this employee said had been circulated.  371 F. App'x. at 217; *accord In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 245 (S.D.N.Y. 2010) (holding that failure to allege that confidential witnesses had presented information to individual defendants was "[f]atal to plaintiffs' claims").

In the Proposed Second Amended Complaint, Plaintiffs also argue for the very first time that the statement in the December Offering and January Offering materials that "we have not identified any unusual or unique events or trends that occurred during the period that might materially affect this preliminary [Q4 2016 revenue] estimate" was knowingly false.  PSAC ¶¶ 144, 151 (emphasis omitted).  This allegation fails for the same reasons that Plaintiffs' other allegations relating to BioAmber's Q4 2016 revenue projections fail—neither the pending First Amended Complaint nor the Proposed Second Amended Complaint contains well-pleaded, sufficient facts that would support a strong inference that at the time any of those projections were made, Defendants understood that the projections were unreasonable and could not be achieved. Indeed, the Company's public statements actually support the ***contrary inference*** that the Company genuinely believed that the projections were reasonable and achievable, and under *Tellabs* this Court must take into account such countervailing inferences in evaluating Plaintiffs'

proposed scienter allegations.  *See* Def. Mot. at 23-24; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007).  In disclosing Q4 2016 revenues the Company stated that "***[t]he entire cash proceeds from the [$1.4 million CJCJ] sale have been received by BioAmber,***" which is consistent with Defendants' belief that the revenue could be recognized in the quarter.  *See* Ex. 7 (BioAmber Form 8-K and Press Release dated March 16, 2017) at 1 and Ex. 8 (BioAmber Form 10-K filed with the SEC on March 16, 2017) at 51 (emphasis added).

The Proposed Second Amended Complaint also attempts to cast BioAmber's ***projections*** of revenue (which are protected from liability under the PSLRA's Safe Harbor provision) as statements of ***historical*** revenues.  *See* PSAC ¶ 26  ("[B]y prematurely recognizing revenues on the sale, Defendants were able to avoid having to report that after four successive quarters of desperately-needed growth, revenues had fallen by more than 82%.").  As BioAmber explicitly told investors (*see* Def. Mot. at 4-5), all of the statements about Q4 2016 revenues that Plaintiffs challenge were made before the quarter ended or before those revenues were finalized, audited for compliance with GAAP by BioAmber's independent auditors, and then publicly announced in BioAmber's financial statements for the year ended December 31, 2016 on March 16, 2017.  The law is crystal clear that an issuer's statement of what it ***expects*** revenues to be in its financial statements for a fiscal period that have not yet been reviewed by auditors and are not yet finalized are projections subject to the protections of the Safe Harbor.  *See* 15 U.S.C. §§ 77z–2(i)(1)(A), 78u-5(i)(1)(A) (PSLRA's definition of protected forward-looking statements expressly includes statements "containing a projection of revenues"); *In re Seadrill Ltd. Sec. Litig.*, No. 14 CIV. 9642 (LGS), 2016 WL 3461311, at *9 (S.D.N.Y. June 20, 2016) (holding that statements about projected revenues were "protected by the PSLRA safe harbor").

Finally, in the Proposed Second Amended Complaint, Plaintiffs seek to add entirely

irrelevant allegations concerning the terms of BioAmber's debt facility with Bridging Finance, Inc. (PSAC ¶¶ 94-97) and Mr. Huc's compensation upon leaving the Company (*id.* ¶¶ 156-57). Plaintiffs do not even attempt to explain how the terms of the debt facility (which were publicly disclosed long before Plaintiffs filed even their First Amended Complaint) are remotely relevant to this case. *See* Pl. Mot. at 6. Similarly, Mr. Huc's compensation had been publicly disclosed long before the First Amended Complaint was filed. Plaintiffs argue that "Defendants had a motive and opportunity to commit fraud" "[b]ecause BioAmber was able to raise money in [the] December 2016 and January 2017 offerings" and Mr. Huc was then "able to leave BioAmber in February 2017 with a payoff amounting to 170% of his annual salary." Pl. Mot. at p. 6. But these wholly speculative assertions lack any factual support whatsoever—Plaintiffs have failed to show that the amount of Mr. Huc's severance payment had anything at all to do with the Offerings (which had occurred many months before he left BioAmber). In any event, "an allegation that defendants were motivated by a desire to maintain or increase executive compensation is insufficient" to allege motive "because such a desire can be imputed to all corporate officers." *Kalnit v. Eichler*, 264 F.3d 131, 140 (2d Cir. 2001).

In sum, Plaintiffs' new allegations are rank speculation, and just as meretricious as the others they seek to add to the Proposed Second Amended Complaint. Adding them now thus would be futile because they are "too speculative and conclusory to support scienter" under Rule 9(b) and the PSLRA. *Id.*

## II.   Plaintiffs' Proposed Amendment Is Unduly Delayed And Dilatory.

The Proposed Second Amended Complaint is Plaintiffs' ***third*** attempt to cobble together a theory of fraud. As the Second Circuit has observed, however, "a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990). Indeed, the Second

Circuit has held that "it is not unreasonable to impute lack of good faith" where, as here, a party waits months before asserting new theories of liability or causes of action. *Id.* Leave to amend here should be denied on this basis alone.

What is more, many of the new allegations in the Proposed Second Amended Complaint were publicly available for several months before Plaintiffs filed their First Amended Complaint. "[L]eave to amend may be denied where the moving party knows or should have known of the facts upon which the proposed amendment is based, but failed to include them in the original pleading." *Priestley v. Am. Airlines, Inc.*, No. 89 CIV. 8265 (JMC), 1991 WL 64459, at *1 (S.D.N.Y. Apr. 12, 1991). Indeed, the proposed allegations regarding the terms of BioAmber's debt facility, Mr. Huc's compensation, and the assurance in the December and January Offering materials that no material developments relating to the Q4 2016 revenue projections had come to light (*see* PSAC ¶¶ 94-97, 144, 151, 156-57) all had been publicly disclosed and were available to Plaintiffs ***between six months to a year*** before the First Amended Complaint was filed. *See* Ex. 9 (BioAmber Form 8-K dated September 14, 2016) at 1 (disclosing the terms of the debt facility); Ex. 10 (BioAmber Form 8-K dated February 17, 2017) at 1 (disclosing Mr. Huc's departure). Moreover, the Vinmar Agreement (which is the principal focus of the Proposed Second Amended Complaint) was executed and publicly disclosed three years before the First Amended Complaint was filed. *See supra* at 9-10. Such lack of diligence by Plaintiffs should not be rewarded. *See Accelecare Wound Ctrs., Inc. v. Bank Of New York*, No. 08 CIV.8351 (DLC), 2009 WL 2460987, at *3 (S.D.N.Y. Aug. 11, 2009) (denying leave to amend complaint where plaintiffs "offer[ed] no excuse to explain" their delay in proposing amendment, which "demonstrates a lack of diligence and, accordingly, a lack of good cause justifying granting leave to amend").

In addition, "where it appears that a plaintiff's purpose in asserting a new claim is his or

her anticipation of an adverse ruling on the original claims, the court will deny leave to amend." *Bymoen*, 1991 WL 95387, at *1. That is precisely the case here. Plaintiffs have not even attempted to address (much less rebut) any of Defendants arguments for dismissal of the First Amended Complaint, instead proposing an entirely new fraud story. Defendants respectfully submit that Plaintiffs should not be permitted to burden both this Court and Defendants with yet another meritless pleading.

**III.   Plaintiffs' Have Abandoned The Claims In The First Amended Complaint.**

"A plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitutes an abandonment of those claims." *Rivera v. Balter Sales Co. Inc.*, No. 14-CV-1205-LTS, 2014 WL 6784384, at *3 (S.D.N.Y. Dec. 1, 2014) (collecting cases). And courts in the Second Circuit regularly dismiss claims where—as here—plaintiffs have not addressed them in opposing a defendant's motion to dismiss. *See, e.g., id.*; *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 JMF, 2013 WL 6838899, at *13 (S.D.N.Y. Dec. 27, 2013). The district court's words in *Adelphia* are entirely apt here: "Plaintiffs did not respond to [the defendant's] arguments with respect to their indemnity claim in their memorandum of law in opposition to the motion to dismiss. Thus, the indemnity claim is deemed abandoned and dismissed on that basis." *Id.*; *accord Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 186 (E.D.N.Y.2012) ([P]laintiff "does not address" defendant's arguments for dismissal "in her opposition brief. The Court thus deems the claim against [the plaintiff] abandoned, and the motion to dismiss it is granted."); *Youmans v. Schriro*, No. 12 Civ. 3690(PAE)(JCF), 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013) (same); *Martinez v. City of New York*, No. 11 CIV 7461 JMF, 2012 WL 6062551, at *1 (S.D.N.Y. Dec. 6, 2012) (same).

Here, Plaintiffs' sole argument in their opposition to Defendant's motion to dismiss is that it should be denied as moot upon filing of the Proposed Second Amended Complaint. *See* Pl. Mot.

at 15-16.  But the allegations that Plaintiffs propose to add in this third complaint would not provide the particularized facts required to support a strong inference of scienter or otherwise plead the elements of a securities fraud claim.  The motion for leave to amend thus should be denied as futile and otherwise inappropriate.  *See supra* at 12-23.

Courts in this Circuit have held that dismissal is warranted in precisely this situation.  For example, in *County of Rockland*, the defendant moved to dismiss plaintiff's complaint pursuant to Rule 12(b)(6).  2010 WL 4968247, at *2.  In response, Plaintiff filed an opposition to defendant's motion and a cross-motion to amend the complaint.  *Id.*  The court noted that "Plaintiff's Opposition d[id] not address Defendants' Motion to Dismiss the original Complaint; it cite[d] exclusively to the Proposed Amended Complaint, in which it include[d] new allegations with respect to each of the four original claims."  *Id.* at *7.  The court then held that "when a plaintiff fails to address a defendant's arguments on a motion to dismiss a claim, the claim is deemed abandoned, and dismissal is warranted on that ground alone."  *Id.* (collecting cases).  Dismissal of this action is likewise warranted here.

## CONCLUSION

For the reasons addressed in this memorandum of law and Defendants' motion to dismiss, Defendants respectfully request that the Court deny Plaintiffs' Cross-Motion For Leave to Amend and dismiss the First Amended Complaint with prejudice.  This action reflects the serial filing of one meretricious pleading after another, and dismissal with prejudice is warranted.  *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014) (affirming district court's denial of leave to amend where "[p]laintiffs have already had one opportunity to amend their complaint").

25

Dated: January 19, 2018                    Respectfully Submitted,

                                           /s/ Brian E. Pastuszenski
                                           Brian E. Pastuszenski
                                           Eric D. Lawson (admitted *pro hac vice*)
                                           GOODWIN PROCTER LLP
                                           The New York Times Building
                                           620 Eighth Avenue
                                           New York, NY 10018
                                           Tel.: 212.813.8800
                                           Fax: 212.355.3333
                                           bpastuszenski@goodwinlaw.com
                                           elawson@goodwinlaw.com

                                           Caroline H. Bullerjahn (admitted *pro hac vice*)
                                           GOODWIN PROCTER LLP
                                           100 Northern Avenue
                                           Boston, MA 02210
                                           Tel.: 617.570.1000
                                           Fax: 617.523.1231
                                           cbullerjahn@goodwinlaw.com

                                           *Attorneys for Defendants*

## <u>CERTIFCATE OF SERVICE</u>

I, Brian E. Pastuszenski, hereby certify that a copy of the foregoing documents were filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).  Paper copies shall be served by first class mail postage prepaid on all counsel who are not served through the CM/ECF system, on January 19, 2018.

<u>/s/Brian E. Pastuszenski</u>
Brian E. Pastuszenski